UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00086-TBR

PHILADELPHIA INDEMNITY
INSURANCE COMPANY, *et. al.*,  PLAINTIFFS

v.

CHERYN LARK LACEY,  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two pending motions. Defendant Cheryn Lark Lacey filed a motion to dismiss for lack of personal jurisdiction, [DN 5.] Plaintiffs Philadelphia Indemnity Insurance Company and Rush Fitness Corp. d/b/a The Rush Fitness Complex responded and filed a cross-motion to transfer venue to the Eastern District of Tennessee, [DN 8; DN 9.] Defendant responded to that motion, [DN 10,] and Plaintiffs replied, [DN 11.] For the reasons discussed fully below, Defendant's motion to dismiss, [DN 5], is **DENIED** and Plaintiffs' motion to transfer venue, [DN 9], is **GRANTED**.

BACKGROUND

Plaintiff Rush Fitness Complex ("Rush Fitness") was a health and fitness club located in Knoxville, Tennessee. [DN 1 at 3 (Complaint).] On July 15, 2009, Defendant Cheryn Lacey signed a Membership Agreement with Rush Fitness, and on August 28, 2009, she signed a second Membership Agreement to work with one of Rush Fitness's physical trainers. [*Id.* (citing DN 1-1 (Membership Agreement); DN 1-2 (Personal Training Membership Agreement).] Lacey alleges that she fell and was injured during a personal training session at Rush Fitness on October 17, 2009 as a result of a wet spot on the floor of the gym. [DN 1 at 3.] Lacey brought a tort action against Rush Fitness in Knox County, Tennessee Circuit Court, which was ultimately

1

resolved in Rush Fitness's favor. [*Id.* at 4] Pursuant to Rush Fitness's insurance policy with Plaintiff Philadelphia Indemnity Insurance Company ("PIIC"), PIIC payed to defend Rush Fitness against Lacey's suit in Tennessee state court. [*Id.*]

In June of 2017, Plaintiffs brought suit against Lacey in the Western District of Kentucky for breach of contract. [DN 1.] According to Plaintiffs, the Membership Agreements that Lacey executed include a section titled "Release of Liability and Assumption of Risk" which provide, in part, that

> If there is any claim by anyone based on any injury, loss, or damage described in this section which involves you or your guest, you agree to (1) defend CLUB against such claims and (2) indemnify CLUB for all liabilities to you, your spouse, guests, relatives, or anyone else resulting from such claims.

[*Id.*] Plaintiffs contend that, because "Lacey refused Plaintiffs' demands for her to defend Rush Fitness or indemnify it from the costs of defending the suit against Rush Fitness for injuries she alleged she sustained at Rush Fitness' facility," she breached the terms of the Membership Agreements. [*Id.* at 5.] In this suit, Plaintiff PIIC seeks to recover "attorneys' fees, costs, and other charges, for which PIIC provided payment and indemnification" pursuant to Rush Fitness's insurance policy with it. [*Id.*] Lacey responded with a motion to dismiss for lack of personal jurisdiction, [DN 5.] In turn, Plaintiffs filed a cross-motion to transfer venue to the Eastern District of Tennessee. [DN 9.]

DISCUSSION

In Lacey's memorandum in support of her motion to dismiss for lack of personal jurisdiction, she argues that both of the Membership Agreements at issue in this breach of contract action "were negotiated, signed, and performed in Knoxville, Tennessee." [DN 6 at 1 (citing DN 6-1 (Lacey Affidavit)).] Further, Lacey's tort suit against Rush Fitness was filed in Tennessee state court. [*Id.* (citing DN 6-1 (Lacey Affidavit)).] Moreover, "Lacey was a resident

2

of Tennessee at all time[s] relevant to the contract and the underlying tort claim." [*Id.* (citing DN 6-1 (Lacey Affidavit)).] Finally,

> currently and at the time the present action was filed, Ms. Lacey resides at 4350 Horizon Homes Street, Las Vegas, Nevada 89129. Ms. Lacey was served with the Plaintiffs' Complaint by certified mail addressed to her former Kentucky address. This mail was eventually forwarded to her residence in Nevada. Ms. Lacey was again served with the Plaintiffs' Complaint by certified mail addressed to her Nevada residence.

[*Id.* at 2 (citing DN 6-1 (Lacey Affidavit) (internal citations omitted)).] According to Lacey's Affidavit, she only resided in Paducah, Kentucky from June 2016 until February 2017, but since that time has lived at her current Nevada address. [DN 6-1 at 1.] Based on the foregoing allegations, including the facts that Lacey was not a Kentucky resident during the events giving rise to this lawsuit or at the time this lawsuit was filed, Lacey argues that this Court cannot exercise personal jurisdiction over her. [DN 6 at 2.]

In their response, Plaintiffs "do not contest Defendant's argument that since she [wa]s no longer a resident of Kentucky at the time suit was filed that this Court lacks personal jurisdiction over her in this matter." [DN 8-1 at 3.] Accordingly, the parties are now in agreement that the Court lacks personal jurisdiction over Lacey, and therefore the Court need not engage in a personal jurisdiction analysis. However, Plaintiffs go on to make a cross-motion for the Court to transfer venue to the Eastern District of Tennessee pursuant to 28 U.S.C. §§ 1631 and 1406(a). Lacey opposes this motion and urges the Court to instead grant her motion to dismiss for lack of personal jurisdiction.

### A. Plaintiffs' Motion to Transfer Venue

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

3

Similarly, 28 U.S.C. § 1631 provides that, when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The Sixth Circuit has explained that "sections 1406(a) and 1631 are 'similar provision[s]' that 'confer broad discretion in ruling on a motion to transfer.'" *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483–84 (6th Cir. 2009) (quoting *Stanifer v. Brannan,* 564 F.3d 455, 456–57 (6th Cir. 2009)). Importantly, because "section 1406 applies to actions that are brought in an impermissible forum; the district court need not have personal jurisdiction over defendants before transferring pursuant to this section." *Jackson*, 421 F. App'x at 483 (citing *Martin v. Stokes*, 623 F.2d 469, 471, 474 (6th Cir. 1980)).

Two questions thus remain for the Court. First, could Plaintiffs' suit originally have been filed in the Eastern District of Tennessee? Second, is transfer to that district in the interests of justice, as is required by the language of §§ 1406(a) and 1631?

**1) Whether Plaintiffs Could Have Brought the Instant Action in the Eastern District of Tennessee.**

With regard to the first question, the answer is clearly yes. The venue statute provides, in part, that "[a] civil action may be brought in--**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiffs' breach of contract claim against Lacey arises entirely out of events that occurred in Knoxville, Tennessee, where Rush Fitness was located and where Lacey brought suit against it in Tennessee state court. Accordingly, "a substantial part of the events . . . giving rise to the claim occurred" in Knoxville, Tennessee, located in the Eastern District of Tennessee, and therefore venue in that district is proper.

Moreover, it appears that a court in the Eastern District of Tennessee would have personal jurisdiction over Lacey. Tennessee's "long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *Williams v. Firstplus Home Loan Owner Tr. 1998-4*, 310 F. Supp. 2d 981, 990 (W.D. Tenn. 2004). To satisfy constitutional Due Process, specific personal jurisdiction over Lacey must exist in the Eastern District of Tennessee. "For specific jurisdiction to exist, the defendant must have certain minimum contacts with the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679–80 (6th Cir. 2012) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 680 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Here, Defendant lived in Tennessee, signed Membership Agreements with Rush Fitness in Tennessee, and sued Rush Fitness in Tennessee state court, which demonstrates that she "purposefully avail[ed] h[er]self of the privilege of acting in the forum state." *Id.* at 680. Next, Plaintiffs' breach of contract action arises solely out of the Membership Agreements and Lacey's lawsuit against Rush Fitness in Knoxville, Tennessee. Finally, Lacey's actions have a substantial connection with Tennessee, as that is where she was a member at Rush Fitness, was allegedly injured at Rush Fitness, and where she sued Rush Fitness for that injury. Therefore, the exercise of personal jurisdiction over Lacey in Tennessee is reasonable.

### 2) Whether Transfer is "In the Interests of Justice."

With regard to the second question, the Sixth Circuit has determined that transfer under §§ 1406(a) and 1631 is in the interests under a variety of circumstances. In *Stanifer v. Brennan*, the Sixth Circuit acknowledged that transfer may be warranted due to "the uncertainties of proper venue," including when a plaintiff "had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Stanifer*, 564 F.3d at 459 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). This is precisely the situation here, where Plaintiffs filed suit and served Lacey in the Western District of Kentucky, where she had indeed resided less than four months prior to the filing of Plaintiffs' suit. Plaintiffs argue that they had a good faith belief that Lacey resided in the Western District of Kentucky at the time they brought the instant lawsuit, and the Court has no reason to doubt this assertion in light of the facts of this case. Accordingly, the fact that Plaintiffs' "mistake was 'one easy to commit'" weighs in favor of transfer rather than dismissal. *Advanced Sols. Life Scis., LLC v. BioBots, Inc.*, No. 3:16-CV-00709-CRS, 2017 WL 2114969, at *8 (W.D. Ky. May 15, 2017) (quoting *Stanifer*, 564 F.3d at 459).

The Sixth Circuit has also found "that the reasons for transferring a case to a proper forum rather than dismissing 'are especially compelling if the statute of limitations has run since the commencement of the action, so that dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits.'" *Jackson*, 421 F. App'x at 484 (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827, at 587 (3d ed. 2007)). This, too, is the situation here, in which Plaintiffs argue that dismissal and re-filing would bring up statute of limitations issues for its breach of contract claim, which is six years under Tennessee law. [DN 8-1 at 6 (citing Tenn. Code § 28-3-109 (a)(3)).]

Finally, courts in the Western District of Kentucky have reasoned that "[t]ransfer is also typically in the 'interest of justice' because it saves 'the parties the time and expense associated with refiling.'" *Advanced Sols.*, 2017 WL 2114969, at *8 (quoting *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 285 (D.D.C. 2015)). Indeed, here, rather than dismissing this lawsuit, thereby forcing Plaintiffs to refile their potentially time-barred claims in another district, transferring the case to that district now saves both time and expense.

**B. Lacey's Arguments Against Transfer and in Support of Dismissal**

In response to Plaintiffs' cross-motion to transfer, Lacey argues that this Court should decline to transfer the case and should instead grant Lacey's motion to dismiss for lack of personal jurisdiction. [DN 10.] First, Lacey argues that Plaintiffs failed to timely respond to her motion to dismiss. [*Id.* at 1.] Indeed, Lacey's motion was filed on July 18, 2017, [DN 5], and Plaintiffs did not file their response and cross-motion to transfer until November 30, 2017. [DN 8; DN 9.] However, as Plaintiffs point out in their reply, this delay was a result of Plaintiffs' efforts to resolve the venue and jurisdiction issues with Lacey outside of court. [DN 11 at 1–2.] Plaintiffs emailed the Court to let them know of these efforts. However, according to Plaintiffs, those efforts were ultimately unsuccessful, which led to the Plaintiffs' response and cross motion to transfer. [*Id.*] Moreover, while Local Rule 7.1 provides that "[f]ailure to timely respond to a motion may be grounds for granting the motion," this standard is permissive, not mandatory. Local Rule 7.1(c). Accordingly, the Court does not find that Plaintiffs' untimely response warrants the granting of Lacey's motion to dismiss.

Second, Lacey argues that Plaintiffs have failed to demonstrate that transfer to the Eastern District of Tennessee is "in the interests of justice." [DN 10 at 2.] Lacey attached to her response email communications between Lacey and Plaintiffs' attorneys discussing a potential

agreed order dismissing the case for purposes of Plaintiffs refiling it in Tennessee federal court. [DN 10-1.] As the Court noted above, such an agreed order was never filed. According to Lacey, however, because Plaintiffs had notice of the lack of this Court's personal jurisdiction over Lacey as of July 18, 2017 and initially agreed to refile the case in Tennessee, the fact that they waited until November 30, 2017 to respond shows that Plaintiffs "fail[ed] to cure known deficiencies" with jurisdiction in this case in a timely manner. [DN 10 at 4.] Therefore, Lacey argues that Plaintiffs cannot now allege a "good faith belief" as of November 30, 2017 that this Court had personal jurisdiction over Lacey. [*Id.*] For these same reasons, Lacey argues that Plaintiffs could have addressed any statute of limitations issues by transferring or refiling their suit in Tennessee in July, when they first became aware of the personal jurisdiction issue. [*Id.*]

The Court finds Lacey's arguments unpersuasive for two reasons. As an initial matter, the very fact that Lacey agreed that Plaintiffs could dismiss this action and refile it in Tennessee (as evidenced by the email communications between the parties' attorneys) is an acknowledgement that the transfer of Plaintiffs' claim to that forum is appropriate. In light of the fact that Lacey initially agreed to this course of action, she cannot show any prejudice she would suffer if Plaintiffs' motion to transfer is granted (nor does she allege any). Rather, the result is essentially the same regardless of whether the Plaintiffs voluntarily dismiss this action and refile in Tennessee or whether the Court grants Plaintiffs' instant motion to transfer. In both scenarios, Plaintiffs' claims end up in the Eastern District of Tennessee. The only difference of which the Court can conceive is that, if the Court dismisses Plaintiffs' instant suit, there is a risk Plaintiffs' claim for relief may be time-barred. As the Court stated above, the Sixth Circuit finds "the reasons for transferring a case to a proper forum rather than dismissing" to be "especially compelling if the statute of limitations has run since the commencement of the action, so that

dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits." *Jackson*, 421 F. App'x at 484.

Next, Lacey cites no case law in support of her argument that a delay in filing a motion to transfer may negate a plaintiff's good faith belief that jurisdiction was proper where a plaintiff initially chose to file. [*See* DN 10.] Plaintiffs assert that they "did not file [the] request to transfer until four months after the motion to dismiss because [they] erroneously believed that the parties would be able to work it out without court intervention." [DN 11 at 2.] The Court finds this explanation reasonable, and therefore disagrees that Plaintiffs' delay should result in the dismissal of their case.

Lacey's final argument is that "no Kentucky case has held that further expense and effort in re-filing was the sole reason to transfer." [DN 10 at 5.] However, this is not the sole basis upon which the Court relies here. Rather, the Court identified multiple reasons why transfer is in the interests of justice, including Plaintiffs' good faith mistake regarding Lacey's state of residence, potential statute of limitations issues with Plaintiffs' breach of contract claim, and, finally, the additional time and expense associated with refiling. Taking all of these factors together, the Court finds that Plaintiffs have met their burden to demonstrate that transferring this case to the Eastern District of Tennessee is "in the interests of justice" under 28 U.S.C. §§ 1406(a) and 1631. Accordingly, the Court will deny Lacey's motion to dismiss for lack of personal jurisdiction and grant Plaintiffs' motion to transfer this case to the Eastern District of Tennessee.

## CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss for lack of personal jurisdiction, [DN 5], is **DENIED**, and Plaintiffs' motion to transfer this case to the Eastern

9

District of Tennessee, [DN 9], is **GRANTED**. Accordingly, the Clerk is hereby **ORDERED** to transfer this case to the Eastern District of Tennessee.

Date:

cc:     Counsel