# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY and RUSH FITNESS CORPORATION d/b/a THE RUSH FITNESS COMPLEX, | ) ) ) ) ) | Case No. 3:18-cv-38 |
| | ) | Judge Travis R. McDonough |
| *Plaintiffs*, | ) ) | Magistrate Judge Debra C. Poplin |
| v. | ) ) ) | |
| CHERYN LARK LACEY, | ) ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Cheryn Lark Lacey's motions for the Court to take

judicial notice (Doc. 45) and for judgment on the pleadings (Doc. 46). For the reasons stated

hereafter, Defendant's motions will be **GRANTED**.

## I.    BACKGROUND

In July 2009, Defendant joined a health and fitness club operated by Plaintiff Rush

Fitness Corporation ("Rush Fitness") in Knoxville, Tennessee. (Doc. 42, at 3.) Upon joining the

club, Defendant signed a membership agreement with Rush Fitness. (*Id.*; *see* Doc. 42-1, at 1–2.)

About a month after joining, Defendant entered another agreement with Rush Fitness for "the

use of a personal fitness trainer to further her physical pursuits." (Doc. 42, at 3; *see* Doc. 42-1, at

3–5.)

Defendant ultimately filed a civil lawsuit against Rush Fitness in the Circuit Court for

Knox County, Tennessee, alleging that, during a training session in October 2009, she slipped on

a wet floor while completing an obstacle course, causing subsequent neck and back pain. (Doc.

42, at 3–4.) As insurer for Rush Fitness and pursuant to the insurance policy, Plaintiff

Philadelphia Indemnity Insurance Corporation ("PIIC") "engaged the services of the law firm of

Spears, Moore, Rebman & Williams, P.C. to defend against [Defendant's] allegations." (*Id.* at

4.) The civil action between Rush Fitness and Defendant was resolved in favor of Rush Fitness,

and Plaintiffs now bring a claim against Defendant[1] for breach of her contract with Rush Fitness,

seeking attorneys' fees, costs, and charges associated with the defense of the civil action. (*Id.* at

4, 6.) The operative language of the contract reads, in relevant part:

> **RELEASE OF LIABILITY AND ASSUMPTION OF RISK:** The use of the
> CLUB and its facilities naturally involves the risk of injury to you and your guest,
> whether you or someone else causes it. As such, you understand and voluntarily
> accept this risk and agree that CLUB will not be liable for any injury, including,
> without limitation, personal, bodily or mental injury, economic loss or any
> damage to you, your spouse, guests, unborn child, or relatives resulting from the
> negligence of CLUB or any on CLUB's behalf or anyone using the CLUB or its
> facilities . . . . If there is any claim by anyone based on any injury, loss, or
> damage described in this section which involves you or your guest, you agree to
> (1) defend CLUB against such claims and (2) indemnify CLUB for all liabilities
> to you, your spouse, guests, relatives, or anyone else resulting from such claims.

(Doc. 45-1, at 1.)

According to Plaintiffs, Defendant breached the terms of the membership agreements

when she "brought suit against Rush Fitness for injuries she alleged she sustained at Rush

Fitness' facility . . . [and] refused Plaintiffs' demands for her to defend Rush Fitness or

indemnify it from the costs of defending the suit against Rush Fitness . . . ." (*See* Doc. 42, at 5–

---

[1] According to the amended complaint, "[t]o the extent that PIIC provided reimbursement to its insured pursuant to its liability insurance policy, it is now subrogated to the interests of its insured and has a claim against [Defendant] as well." (Doc. 42, at 6.)

6.)  Plaintiffs initiated the instant action on June 2, 2017, and amended their complaint on April 4, 2018.  (Docs. 1, 42.)  Defendant filed a motion for judgment on the pleadings, and the Court heard oral argument on this motion on July 24, 2018.  This motion is now ripe for the Court's review.

## II.   MOTION TO TAKE JUDICIAL NOTICE

Defendant requests this Court take judicial notice of certain certified public records of the Circuit Court for Knox County, Tennessee, in the case of *Lacey v. Rush Fitness Corp.*, Civil Action No. 2-501-10 (the "Prior Action").  (*See* Doc. 45.)  In response, Plaintiffs concede that the Court may take judicial notice of the proposed records, but "may only take judicial notice of the existence of these filings and their contents, nothing more."  (Doc. 49, at 5.)

A court may consider matters of public record in deciding a motion for judgment on the pleadings without converting the motion to one for summary judgment.  *See, e.g.*, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *see also Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (noting that "[a]ll circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record" when deciding a Rule 12 motion).  However, "taking judicial notice of documents has been limited by some courts to allow only 'the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein.'"  *Stafford v. Jewelers Mut. Ins. Co.*, 554 F. App'x 360, 369 (6th Cir. 2014) (quoting *Passa*, 123 F. App'x at 697); *see also Commercial Money*, 508 F.3d at 336 (taking judicial notice of a brief which "was a public

record and was offered not to establish any disputed facts, but to incorporate the arguments articulated in an analogous situation"). In *Passa*, the Sixth Circuit explained:

> [T]he majority of the cases which do not allow a court to take judicial notice of the contents of a public record do so because there is no way for an opposing party, prior to the issuance of the court's decision, to register his or her disagreement with the facts in the document of which the court was taking notice. Thus, in order to preserve a party's right to a fair hearing, a court, on a motion [for judgment on the pleadings], must only take judicial notice of facts which are not subject to reasonable dispute.

123 F. App'x at 697. The Court will **GRANT** Defendant's motion (Doc. 45), limiting its consideration only to the existence of the documents and those facts therein not subject to reasonable dispute.

## III.    MOTION FOR JUDGMENT ON THE PLEADINGS

### A.  Standard of Review

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Thus, on a Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the

4

mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549.

**B.  Analysis**

Defendant raises five arguments in support of her motion for judgment on the pleadings: (1) Tennessee's compulsory-counterclaim rule bars Plaintiffs' claims; (2) the defense and indemnity provisions of the Agreement (the "D&I Clauses") violate Tennessee public policy and

are therefore void and unenforceable; (3) the D&I Clauses violate Tennessee Code Annotated § 47-18-301 and are therefore void and unenforceable; (4) Plaintiffs' claimed damages do not fall within the scope of the D&I Clauses; and (5) Tennessee's application of the "American Rule"[2] bars any award to Plaintiffs for recovery of attorney fees. (*See* Doc. 46.)

Defendant first argues that Plaintiffs' claim against her is barred by Tennessee's compulsory-counterclaim rule.[3] (Doc. 46, at 9–15.) In response, Plaintiffs argue that, although they could have asserted their claim as a counterclaim in the Prior Action, they were not required to bring it as a compulsory counterclaim. (Doc. 49, at 16.) Specifically, Plaintiffs argue their claim for breach of contract was not a compulsory counterclaim because: (1) it had not fully matured at the time of the pleading; and (2) it did not arise out of the same transaction or occurrence as Defendant's claim in the Prior Action. (*Id.* at 17–19.)

Tennessee Rule of Civil Procedure 13.01 provides:

> A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject to another pending action. This rule shall not be construed as requiring a counterclaim to be filed in any court whose jurisdiction is limited either as to subject matter or as to monetary amount so as to be unable to entertain such counterclaim.

---

[2] The "American Rule" provides that "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

[3] The parties do not dispute that the Court should apply the Tennessee compulsory-counterclaim rule in deciding whether Plaintiffs' claims should have been brought in the underlying state-court action. (*See* Doc. 46, at 9; Doc. 49, at 16–19.)

"The purpose of the compulsory counterclaim rule is to insure that only one judicial proceeding be required to settle all those matters determinable by the same facts or law, that is, to bring all logically related claims into a single litigation, thereby avoiding multiplicity of suits." *Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981).  Accordingly, "if a party fails to file a counterclaim, other than those excluded by the Rule itself, in response to a pleading in accordance with Rule 13.01 and the controversy results in a final judgment, then that party would be precluded from filing suit on that claim." *Crain v. CRST Van Expedited, Inc.*, 360 S.W.3d 374, 379 (Tenn. Ct. App. 2011).

An exception exists under Tennessee's compulsory-counterclaim rule when all the elements of a cause of action have not yet "accrued" at the time the answer is filed.  *See* 1 Tenn. Cir. Ct. Prac. § 13:3.  Plaintiffs argue their claim falls within this exception because counterclaims for indemnity do not mature until the "party seeking indemnification . . . suffer[s] the loss for which indemnity is claimed . . . ." (Doc. 49, at 7 (citing *Hindmon v. Jones*, No. E200700670COAR3CV, 2008 WL 2557373, at *7 (Tenn. Ct. App. June 27, 2008)).)  According to Plaintiffs, because no defense-cost payments had been made before Rush Fitness initially answered the complaint in the Prior Action, and the payments did not conclude until after the underlying lawsuit concluded, the full claim did not mature until the conclusion of the Prior Action.  (*Id.* at 17.)  In response, Defendant argues that Plaintiffs' claim accrued as soon as Plaintiffs consulted with an attorney to defend them in the Prior Action.  (Doc. 50, at 7.)  In support of her argument, Defendant cites only a Missouri state-law case, *Port v. Maple Tree Investments, Inc.*, 900 S.W.2d 3 (Mo. Ct. App. 1995).

Although Plaintiffs now classify their claim as one for indemnification, it is actually a claim for breach of contract.  (*See* Doc. 42.)  Specifically, Plaintiffs' amended complaint alleges

Defendant breached the terms of the Membership Agreement when she "brought suit against

Rush Fitness for injuries she alleged she sustained at Rush Fitness' facility and . . . refused

Plaintiffs' demands for her to defend Rush Fitness or indemnify it from the costs of defending

the suit against Rush Fitness for injuries . . . ." (*Id.* at 5.)  In Tennessee, "a breach of contract

claim generally 'accrues' when the breach occurs rather than the time that actual damages are

sustained as a consequence of the breach." *Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp.

1023, 1036 (E.D. Tenn. 1994) (citations omitted); *see also, e.g.*, *Greene v. THGC, Inc.*, 915

S.W.2d 809, 810 (Tenn. Ct. App. 1995) ("The statute of limitations begins to run as of the date

of the breach.").  As Plaintiffs contend in their own amended complaint, PIIC "engaged the

services of the law firm of Spears, Moore, Rebman & Williams, P.C. to defend against

[Defendant's] allegations." (*Id.* at 4.)  Accordingly, Plaintiffs were aware at the time they filed

their answer in the Prior Action that Defendant was in breach of the duty-to-defend clause of the

Membership Agreement.

Plaintiffs next argue that their claims did not arise out of the same transaction or

occurrence as Defendant's claim in the Prior Action.[4]  Explicit in the text of Rule 13.01 itself is

the requirement that compulsory counterclaims arise out of the same transaction or occurrence

that is the subject matter of the opposing party's claim.  *See* Tenn. R. Civ. P. 13.01.  In *Creech v.

Addington*, 281 S.W.3d 363 (Tenn. 2009), the Tennessee Supreme Court explained that

"transaction or occurrence" as used in the Tennessee Rules of Civil Procedure is analogous to its

meaning in the Federal Rules of Civil Procedure.  *Id.* at 380 ("Of course, Tennessee's procedural

rules match the federal rules in this regard."); *see also Clements v. Austin*, 673 S.W.2d 867, 869

---

[4] It should be noted, however, that Plaintiffs conceded at oral argument that whether Plaintiffs'
breach-of-contract claim arises out of the same transaction or occurrence as Defendant's claim in
the Prior Action is a "close call."

(Tenn. Ct. App. 1983) ("Rule 13, Tennessee Rules of Civil Procedure, is closely akin to Rule 13 of the Federal Rules of Civil Procedure."). The Sixth Circuit applies a "logical relationship" test to determine whether claims arise out of the same "transaction or occurrence" as that phrase is used in the federal rule on compulsory counterclaims. *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991) (determining whether a counterclaim was compulsory under Fed. R. Civ. P. 13(a)). Under this approach, claims arise out of the same transaction or occurrence if "the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593 (1926)).

Plaintiffs argue that "while there [is] overlap of some issues, the instant action and the [Prior] Action primarily involve different sets of operative law and facts." (Doc. 49, at 18.) Specifically, Plaintiffs argue the Prior Action "arose solely from Defendant's slip and fall at Rush Fitness on a specific date and time . . . [and] concerned Defendant's injuries and whether Rush Fitness caused those injuries . . . [whereas] Plaintiffs' claim is for breach of a contract that occurred long after Defendant was injured." (*Id.* at 18–19.)

Plaintiffs' characterization of Defendant's original claim as a "slip and fall" is not entirely accurate. In the Prior Action, Defendant also brought claims for violation of the Tennessee Consumer Protection Act ("TCPA") and intentional misrepresentation—both of which brought the Agreement into dispute. (*See* Doc. 45-2, at 6–8.) Accordingly, Plaintiffs' current claim for breach of contract and Defendants' earlier TCPA and intentional-misrepresentation claims all arise out of the contractual relationship between Plaintiffs and Defendant. *See Suddarth v. Household Commercial Fin. Servs., Inc.*, No. M200401664COAR3CV, 2006 WL 334031, at *4 (Tenn. Ct. App. Feb. 13, 2006) (holding that

9

claim was a compulsory counterclaim under Federal Rule of Civil Procedure 13 because "[i]t is undisputed the former action arose out of the same business relationship . . . at issue in the present action, and specifically out of the guaranty agreement sued on in the former action."). They also require similar proof and similar issues of law and fact relating to the validity and construction of the Agreement. *See Lowe*, 1994 WL 570082, at *4 (finding claim did not arise out of the same transaction or occurrence in part because the "claims embody different causes of action, involve different issues of law and fact, and require different proof"). Moreover, the purpose of the compulsory-counterclaim rule—to bring all logically related claims into a single litigation—would be furthered by treating Plaintiffs' current breach-of-contract claim as a compulsory counterclaim. *See Quelette*, 627 S.W.2d at 682. Accordingly, the Court finds that Plaintiffs' claim should have been brought in the Prior Action under Tennessee Rule of Civil Procedure 13.01 and is now barred by the compulsory-counterclaim rule.[5]

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motions (Docs. 45, 46). Plaintiffs' claim is hereby **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL FOLLOW.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[5] Because the Court grants Defendant's motion for judgment on the pleadings on this basis, it need not address Defendant's remaining arguments.